JEFFREY D. WOHL (Cal. State Bar No. 096838)
JUSTIN M. SCOTT (Cal. State Bar No. 302502)
JESSE C. FERRANTELLA (Cal. State Bar No. 279131)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105-3441
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
justinscott@paulhastings.com

ELENA R. BACA (Cal. State Bar No. 160564)
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705
elenabaca@paulhastings.com

*Related cases listed on next page.*

Attorneys for Defendant
Rite Aid Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINE BARGAS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>RITE AID CORPORATION, and DOES 1 through 50, inclusive,<br><br>Defendant. | No. CV 13-3865 MWF (JEMX)<br><br>**DEFENDANT RITE AID CORPORATION'S POST-TRIAL BRIEF**<br><br>Courtroom: 5A<br>Judge: Hon. Michael W. Fitzgerald |

*Related to Nos.:*

CV 13-7720 MWF (JEMx)
CV 14-4048 MWF (JEMx)
CV 14-4186 MWF (JEMx)
CV 14-4352 MWF (JEMx)
CV 14-4353 MWF (JEMx)
CV 14-4359 MWF (JEMx)
CV 14-4532 MWF (JEMx)
CV 14-4536 MWF (JEMx)
CV 14-4552 MWF (JEMx)
CV 14-4566 MWF (JEMx)
CV 14-4916 MWF (JEMx)
CV 14-7730 MWF (JEMx)
CV 15-1727 MWF (JEMx)
CV 15-1801 MWF (JEMx)
CV 15-8950 MWF (JEMx)
CV 15-2503 MWF (JEMx)
CV 16-0426 MWF (JEMx)
CV 16-2712 MWF (JEMx)

## I. Plaintiff's Trial Testimony Was Not Credible and, Where It Contradicted the Testimony of Others, It Should Be Disregarded.

As Rite Aid demonstrated during closing argument, plaintiff's inconsistent testimony left the record confused and rendered her claim of overtime hours incalculable.[1] Plaintiff gave long, shifting and evasive answers on key issues (*i.e.*, whether she received general training, knew Rite Aid's expectations, understood financial data). She was repeatedly impeached; her response to whether she would make false statements because she wanted something was: "I mean I guess. I don't know." 11/09/16 Trial Tr., 6:7-17. Her performance on the stand provides ample reason for the Court to disregard much of her testimony as it relates to her alleged manual labor (*e.g.*, that she painted bathrooms, broke down the load, worked the register in the mornings) and/or could take meal and rest breaks—particularly where her testimony was at odds with that of other witnesses.

## II. Plaintiff Admitted She Primarily Engaged in Exempt Duties.

With respect to the duties she performed, plaintiff admitted that she spent *at least* 60% of her time on exempt tasks: supervising associates; walking the floor to inspect its condition; hiring and recruiting employees; training associates; coaching associates; and disciplining, terminating, promoting, and demoting employees. 11/09/16 Trial Tr., 106:19-107:5, 107:9-108:11, 108:19-109:8. At no time during the trial, did plaintiff offer evidence that deviated from her admissions.[2]

---

[1] Merely to illustrate, plaintiff claimed to work 12-hour days, but could not state how many times she worked 12 hours in a day, testified that she would work a shorter shift the following day if "the day before she worked 12 hours," testified that she would arrive at the Commerce store at 7 or 7:30am or earlier (but conceded there were many times she was late), complained that she could not leave until 5pm (9 ½-10 hours per day if she did not take a meal period) but then admitted there were times that she left the store earlier. 11/4/16 Trial Tr., 139:17-140:8, 141:14-16, 180:25-181:2, 11/9/16 Trial Tr., 62:14-63:1. Plaintiff's subordinates testified she was late to work "most of the time" or "every single day," and also left early, and plaintiff stated they were telling the truth. 11/8/16, Trial Tr., 138:21-139:24, 146:23-147:5, 173:15-24, 214:22-215:4, 244:20-24; 11/9/16 Trial Tr., 17:11-18, 64:6-11.

[2] Granted, during closing argument plaintiff's counsel purported to describe some

There is good reason. Any claim that plaintiff did not spent the majority of her time performing exempt tasks would contradict directly her own sworn testimony and that of her former subordinate employees: **Ms. Valdivia** (plaintiff's witness) testified that plaintiff spent 60 to 70 percent of her time making decisions to manage the store, 11/02/16 Trial Tr., 107:21-108:3; **Ms. Fernandez** testified that plaintiff spent most of her time in the office, infrequently did manual labor, did "very little" stocking; "never" broke down load; and Ms. Fernandez did not observe her cleaning, 11/08/16 Trial Tr., 147:16-19, 148:24-13; **Ms. Garcia** testified that plaintiff spent more time in her office than conducting physical tasks and, when plaintiff was in the office, she was not engaged in manual labor like stocking, cleaning, or unloading, 11/08/16 Trial Tr., 179:3-23; **Ms. Peña** testified that plaintiff spent approximately "80% of the time" in the office, where she paid invoices, worked on the computer, and monitored employees on the camera, and Ms. Peña did not frequently observe plaintiff stocking, breaking down the load, scooping ice cream, or cleaning, 11/08/16 Trial Tr., 257:7-24, 258:3-12; **Ms. Bonnie Reyes** testified that plaintiff spent 85% of her time in the office, where she observed employees on the camera and, when she was on the floor, plaintiff monitored others and did not frequently clean or break down the load, 11/10/16, Trial Tr., 65:1-66:7; **Ms. Kellie Reyes** testified that plaintiff was "mainly" in the office (about 75% of the time), conducted "manager duties" while walking the floor, did not perform much manual labor, and "never" broke down the load, 11/10/16, Trial Tr., 73:11-74:24; **Ms. Angulo** testified that plaintiff spent "more time" in the office than on the floor, where she completed "paperwork," talked on the phone, or monitored employees by camera to "make sure [they were] working," and further testified that plaintiff "never" cleaned and did not break down the load very often, 11/10/16, Trial Tr., 25:24-26:23, 27:1-12; and **Ms. Brouillette** testified that plaintiff spent about 5 to 6 hours each day in her office, and

---

other part of plaintiff's deposition testimony on the subject. Besides the fact that this deposition testimony is not in evidence, all this argument did was highlight (yet again) plaintiff was contradicting earlier sworn testimony.

did not frequently engage in manual labor, 11/10/16, Trial Tr., 50:1-23. Plaintiff presented no credible evidence of the time she allegedly performed non-exempt tasks on a weekly basis.

### A. Plaintiff's "Week-by-Week" Evidentiary Challenge Is Illusory.

Plaintiff argued in closing that Rite Aid did not show that plaintiff was exempt because it did not dice her employment up into individual weeks and address them one at a time. However, plaintiff admitted that the work she performed was "*the same*" throughout the period:

> Q. In terms of how you performed your job, the sorts of tasks you would do on a day-to-day basis, were they essentially the same whether you were working for Mr. Jalili or reporting to Ms. Contreras?
>
> A. It was the same. Everything was the same. Just the remodel that was difficult and the environment was different too. And the way I had to work and under the conditions I had to work, yes, they were the same.
>
> …
>
> Q. And as far as it was explained to you what you were doing as a store manager was not—well, the job that you were performing as store manager was not supposed to be different after this roll out of leadership training in the fall of 2009?
>
> A. I just did everything same way I did it. All the time.

11/09/16 Trial Tr., 105:20-106:2, 236:3-8. According to plaintiff, the testimonial evidence about the duties she performed necessarily applies to all relevant weeks.

### B. That Nonexempt Employees Performed Some Exempt Duties Does Not Make Those Duties Nonexempt.

Plaintiff repeatedly argued that the managerial duties she performed must be nonexempt because some of them also were performed by nonexempt managerial employees in the store, such as the Assistant Store Manager and Shift Supervisor. 11/10/16 Trial Tr., at 106:2-11. Plaintiff's argument is directly contrary to Ninth Circuit authority. "That the assistant managers may have performed some managerial tasks [as managers] does not render the tasks nonexempt," nor does the fact that store managers performed "some of the same tasks as their subordinates" suggest they somehow do not

qualify for the exemption. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) (inn managers); *accord Murray v. Stuckey's Inc.*, 939 F.2d 614, 618-19 (8th Cir. 1991) (retail store managers); *Whiteway v. FedEx Kinko's Office & Print Servs.*, 2007 WL 2408872, at *5 (N.D. Cal. Aug. 21, 2007) (applying rule to action brought under California Labor Code), *rev'd on other grounds*, 319 F. App'x 688 (9th Cir. 2009). Where an exempt store manager delegates some managerial functions to other store associates, "such delegation does not render the duties any less 'managerial,'" nor does such delegation "minimize the importance of the duties or render them non-exempt." *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1276 (S.D. Fla. 2004) (retail store manager).

Plaintiff's argument would invalidate, among other things, 29 C.F.R. § 541.102 (pre-August 23, 2004), which lists specific examples of exempt work. According to plaintiff, if her Assistant Store Manager or Shift Supervisor also "train[ed]" or "direct[ed]" subordinate employees (among many other exempt functions), those duties then transmogrify into nonexempt duties. This is not and cannot be the law. Plaintiff admitted she performed exempt duties *at least* 60% of the time. She cannot unwind this testimony by offering an erroneous argument about the duties of her subordinates.

### C. Additionally, Plaintiff Conceded that She Chose to Perform Certain Job Duties for an Exempt Purpose.

Plaintiff's admission that she performed exempt work 60% of the time satisfies the "primarily engaged" analysis under California's exemptions. However, by plaintiff's own admission, she spent even more time performing exempt duties. There are two reasons. First, plaintiff admitted that she spent her day performing the duties outlined in the Store Manager job description (Trial Exh. No. 4). 11/09/16 Trial Tr. 181:5-183:6, 188:25-191:5, 193:2-10, 195:10-197:21.

Second, some of the duties plaintiff claims she performed—as she described the reason for performing them—rendered them exempt rather than nonexempt duties. This specifically includes the time she spent working on the register to analyze her customer

and her customer's product preferences, 11/09/16 Trial Tr., 31:12-17, 32:13-33:6; the time she spent showing her employees how to stock and control inventory the first several months after she took over a new store, 11/09/16 Trial Tr., 23:19-25:13; and walking the store to inspect and direct work, 11/09/16 Trial Tr., 107:6-18.

Here is why. *Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795 (2013), instructs that, "[i]f a task is performed because it is helpful in supervising the employees or contributes to the smooth functioning of the department or subdivision for which the supervisors are responsible, the work is exempt; if not, it is nonexempt." *Id.* at 826 (internal citations, quotations, and brackets omitted). "A task performed because it is helpful in supervising the employees or contributes to the smooth functioning of the department is exempt, *even though the identical task performed for a different, nonmanagerial reason would be nonexempt*." *Id.* at 822 (emphasis supplied). Thus, plaintiff's testimony demonstrates that, even where she was engaged in otherwise non-exempt tasks, she frequently performed these tasks for an exempt, managerial purpose. Under *Heyen*, that work is exempt under California law and would be in addition to the 60% of her time spent performing specific exempt job duties.

### D. Plaintiff Was Not a "Working Foreman."

During plaintiff's closing argument, she introduced a new argument: that she was a "working foreman," not an exempt Store Manager. 11/10/16 Trial Tr., 97:14-100:4. This new-fangled argument does not save plaintiff's claims. A working foreman is one who "regularly performs 'production' work or other work which is unrelated or only remotely related to [her] supervisory activities." 29 C.F.R. § 541.115(a) (pre-August 23, 2004). By way of example, the regulation references "strawbosses, or gang or group leaders" or factory "foreman … who operate[] a sewing machine" who perform the same kind of work as their subordinates, as well as individuals who perform effectively "dual jobs" because they lack sufficient executive duties to occupy their time. *Id.*, § 541.115(c). Simply put, "the 'working foreman' regulation was designed to fit a factory floor or construction site paradigm," and has not been extended to other contexts. *Anderson v.*

*City of Cleveland, Tenn.*, 90 F. Supp. 2d 906, 918 (E.D. Tenn. 2000).

The working foreman exception does not apply "where an individual's responsibilities extend 'to the evaluation of ... subordinates' and include 'the exercise of considerable discretion.'" *Jones v. Virginia Oil Co.*, 69 F. App'x 633, 639 (4th Cir. 2003) (unpublished) (punctuation in original) (quoting *Shockley v. City of Newport News*, 997 F.2d 18, 27 (4th Cir. 1993)); *accord Anderson*, 90 F. Supp. 2d at 919-20. Nor does the working foreman exception apply to persons who manage a customarily recognized subdivision of a business. *Shockley*, 997 F.2d at 26 ("the 'working foreman' concept is useful because it helps to distinguish between a manager of a recognized subdivision and a mere supervisor of subordinate employees").

Courts have therefore rejected arguments that store managers are working foremen. *Jones*, 69 F. App'x at 637, 639 (rejecting argument that store manager was working foreman where she "engaged in the supervision of employees, handled customer complaints, dealt with vendors, and completed daily paperwork"); *see also Ward v. Family Dollar Stores, Inc.*, 2012 WL 6165926, at *3 n. 7 (W.D.N.C. Dec. 11, 2012) (same); *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1275 (S.D. Fla. 2004) (rejecting store manager's argument that he was "working foreman" where he admitted he was "accountable for the store's success or failure" and managed store personnel).

Here, plaintiff admitted she was in charge of her store. 11/09/16 Trial Tr., 25:1-5, 101:21-23. The Court heard testimony about the Store Manager being the "heart of the store," Bennie, 11/02/16 Trial Tr., 185:4-12, and plaintiff admitted she was responsible for the financial health of her store and would make daily decisions that would drive sales and expenses, impact the overall customer experience, and the experience of her associates. 11/09/16 Trial Tr., 33:1-6, 101:8-102:17, 124:10-125:3, 125:23-126:18. Plaintiff admitted that these were "significant" decisions that impacted Rite Aid's bottom-line profitability. *Id.*, 126:19-127:10. She admitted that she engaged in the tasks that distinguish managerial employees from working foremen, including evaluating employees, exercising discretion and independent judgment, supervising employees,

handling customer complaints, dealing with vendors, and reviewing and completing store paperwork. 11/04/16 Trial Tr., 126:21-23; 11/09/16 Trial Tr., 102:7-14, 108:22-109:8, 158:5-18, 195:22-25, 212:20-25. Given plaintiff's position as a Store Manager, and her own admissions, her "working foreman" argument is nothing more than a last-ditch attempt to mischaracterize the actual job that she performed at Rite Aid.

## III. Plaintiff Exercised Discretion and Independent Judgment with Respect to Matters of Significance.

Finally, plaintiff disputes that she "customarily and regularly exercised discretion and independent judgment on matters of significance." But plaintiff admitted she would exercise "judgment and discretion" as a Store Manager, consistent with the expectations in Rite Aid's job description. 11/09/16 Trial Tr., 158:5-18, 161:1-10. She agreed point blank that she made significant decisions in her stores:

> Q. You would agree that evaluating and picking the right people for your store, that's a significant decision, right?
>
> A. Yes.
>
> …
>
> Q. And you would agree with me that the decisions that you made that impacted the bottom line, those are significant decisions, correct?
>
> A. Yes. I did this based on what I knew, but they didn't train us all this stuff, like all this that you're showing me. I never got trained for any of this. But I did do all the stuff…

11/09/16 Tr., 123:21-23, 126:19-25. Additional examples of plaintiff's exercise of discretion and independent judgment include: plaintiff visited competitors to assess potential changes to her store; she chose to schedule "ghost hours" to ensure she had additional labor at her stores; she collaborated with the pharmacy and traveled so she could recruit persons for Rite Aid's Wellness Plus Program; and she countered competition by ensuring proper ordering and display of inventory. 11/09/16 Trial Tr., 68:7-69:7, 133:16-134:5, 134:11-15; 11/02/16 Trial Tr., 115:16-25.

## IV. CONCLUSION

For the foregoing reasons, the Court should enter judgment for Rite Aid.

Dated: November 18, 2016.

JEFFREY D. WOHL
ELENA R. BACA
JUSTIN M. SCOTT
PAUL HASTINGS LLP

By: /s/ Elena R. Baca
Elena R. Baca
Attorneys for
Defendant Rite Aid Corporation